Good morning, Your Honors. May it please the Court. My name is Paul Salvati. I'm with Glaser Weill and I represent the appellants in this case. I'm here with my partner, Robert Shapiro. Thank you. There are a number of issues we could discuss today, and I think we addressed many of them in the briefs. There are just a couple of issues I wanted to focus on in my argument today. First, I want to touch upon the jurisdictional issue. We believe the Court here was required to apply California's anti-SLAPP statute and could not have applied Nevada's anti-SLAPP statute. I want to understand your argument on that. You argue in your brief that it was required to apply the California SLAPP statute because it is procedural. Correct? That is That argument is really not available to you anymore. Is it after Maycaf? I believe, Your Honor, that the argument in Maycaf and in Newsham, those cases hold that a district court, a California district court sitting in diversity, should apply California's anti-SLAPP statute.  I think the court should apply the procedural law, or it ought to apply it. But really it is substantive, is it not? We've said so. Well, I don't ‑‑ I respectfully disagree with that, Your Honor, because I believe when you focus on Newsham, Newsham, the Newsham case, the Court says it analyzes whether the state procedural rule, the California anti-SLAPP statute, is in direct collision with the Federal Resistance Law procedure. Right. But we've then gone on to say that the SLAPP statute, and I think Maycaf is right on point there, that the SLAPP statute is substantive, and therefore we are required to apply it. If it were procedural, Maycaf would have come out differently, would it not? Certainly we wouldn't allow an appeal from a procedural statute in conflict with 1291. I think you come at it the same way. Let me preface this by saying I think that under choice of law principles, it might well be that the California court would apply the substantive law of California here to the ‑‑ and apply the anti-SLAPP statute. But I don't understand your argument after Newsham and Maycaf that it's a procedural law. And, Your Honor, I agree that on choice of law principles, I think we do come out the same. But I believe that under Newsham and Maycaf, we really don't need to get there because the holdings of those cases, including the most recent Maycaf opinion in November of last year, is that the state procedure supplements and does not conflict with the FRCP. And they talk about it only in terms of state procedural rule, the California anti-SLAPP statute, and the federal procedural rules, the FRCP. And they go on to analyze Erie and say that the goals of Erie are advanced. The state interest in having the anti-SLAPP rules are advanced. And the goals of Erie are advanced by applying this state procedural rule. So let's assume you're right on this issue no matter what theory we apply. Does it necessarily follow that we would apply ‑‑ and that's a jurisdictional issue ‑‑ that we would apply California law to the substantive claims in the complaint? In other words, in analyzing whether or not the complaint, in the strange words of the California statute, doesn't have a reasonable probability of success, even though the real standard is a summary judgment standard, why wouldn't we use ‑‑ why wouldn't we apply Nevada law to the underlying malicious prosecution and other claims, since all the acts occurred in Nevada? Well, we raise several arguments on that. I think really one of our main arguments there, Your Honor, is that Mr. Francis chose to bring his lawsuit in California, and he alleges in his complaint that many of the breaches and acts arose in California. Yeah, but that's simply not true, is it, with respect to the malicious prosecution claim? I mean, we know from the summary judgment, it's sort of record in this case, that his complaint is that your clients went to the Las Vegas police and filed a criminal complaint. Everything occurred in Nevada. So why, with respect to that claim, don't we apply Nevada law? I concede that many of the issues, the filing of the complaint and all those activities occurred in Nevada. I think that Mr. Francis brought the suit and alleged that the injury to him flowing from that conduct occurred in California. So that's his allegation, and we believe that is at least one factor that the court would balance in deciding to apply California. I wonder if I could ask you a question about the merits. If I understand correctly, the gist of their complaint is that your folks checked a box that said this marker was put through in the ordinary course of business, and that, in fact, was not put through in the ordinary course of business. Correct. At this early stage, why doesn't that get them past basically what Judge Hurwitz describes as kind of the summary judgment sort of standard? Your Honor, because the undisputed evidence that we submitted in support of our motion establishes that taking the totality of the circumstances, there cannot possibly be a finding of either falsity or malice. And the reason is the plaintiff wants the court to focus on the individual checked boxes here, but you can't look at that in a vacuum. If you look at the evidence, including the declaration of Ms. Conway and the declaration of the DA, Mr. Zdrowski, the complaint form included all the information relevant to the facts leading up to this referral to the district attorney, and the district attorney conducted his own independent investigation in talking to Ms. Conway and gathering all the facts. But that's not what the district court found. The district court found that applying that you had an absolute privilege. The district court dealt with the privilege issue, I'm sorry, right? The district court applied Nevada law. Applied Nevada law and found that there was no absolute privilege and, therefore, there was a question of fact. The district court made a finding that there was sufficient evidence presented by plaintiff of malice. Right. That's what I'm asking. We disagree with that holding because if you look at the declarations that we submitted, it makes clear that all that the defendants did was refer this matter to the DA for possible investigation. And the DA then investigated the facts and had all of the facts regarding when the markers were taken out, the amount of time that passed between when the markers were taken out and when the marker was submitted to the bank, which account it was submitted to, all of those facts about the process. Yeah, but the key fact is that that's not in the ordinary course of business. Well, two things, Your Honor. The boxes that were checked explained what actually happened. You can read that box, and even looking at it in a narrow window, you can look at that box, and it could mean any number of things. It could, but on summary judgment, don't we have to give all the inferences to your opponent? Even if you give the inferences to the opponent, Your Honor, when you look at the evidence that we submitted, all the information, complete information and truthful information, was presented to the DA. The DA took it from there and conducted its own investigation and decided to present it to the grand jury. So there's nothing that we withheld. There's nothing that we misstated. The fact that the box was checked and the information about what course of business was actually followed was presented to the DA, and that's undisputed. And there's simply no evidence presented by the plaintiff. The plaintiff must, under either Nevada law or California law, must come forward with something to show that the defendants acted with malice, that they intentionally misrepresented something or that they acted in reckless disregard. And when you look at the undisputed evidence here, there's simply no way that a finding of malice could be supported. So they must come forward with something. And, yes, there's no question. There's certainly evidence of malice. There's no question. You can't deny that. There's evidence of malice just by the answers to the questions, and the trial judge has already found that. The trial judge did find that, but this is de novo review, and we don't see any evidence. There's nothing that the plaintiff actually came forward with to show that we weren't truthful and complete in what we provided to the DA. Well, what you're saying is if we're believed, after all, your client agents checked a box on this criminal complaint form. That was false. The evidence that we can take at this stage of the proceedings was false. This was not a collection proceeding made according to your ordinary course. We do respectfully disagree with that, but I think even if you – and the reason we disagree with that is because the casino followed its ordinary course, which is negotiate with your customer. As soon as negotiations break down, you submit it to the bank, and within 30 days of that, you then refer it for criminal prosecution. When you look at the box, it doesn't exactly – there's many interpretations for the box. But even putting that aside, even if the box were erroneously filled out, the undisputed evidence is Deputy DA Zdravsky said that was the appropriate way to do it, and the full information was presented to the DA. So he can do it. Can I ask you a practical question? And I'll ask – I'll say this before your opponent stands up. It seems to me your opponent has an incredibly weak case. It may well survive summary judgment, but it's a pretty thin case. What do we gain by being up here arguing about the SLAP statute right now? Why don't you just go back down and win it? Why are we here? I know you're entitled to be here, but I'm troubled by why we're fighting in the middle of a case that if you're right should get dismissed about whether it should be – whether or not you should get fees early on to get it dismissed. I know you're entitled to be here, but this troubles me about the SLAP litigation. And we understand. It's just that we view the case as not merely weak, but just completely groundless. It definitely seeks to impose liability for activities which we believe are protected by the First Amendment. And going forward, the litigation is going to be costly because there's going to be depositions. There's going to – you know, it's already – we had a civil case already. You know, we've been through that in Nevada. I guess I'm asking what's the consequence? What's the consequence? Let's assume that we agree with you that the SLAP motion should have been granted. Does that mean that you will receive summary judgment, Bob? It means that the case will be gone. It will be stricken and will be done, and we'll be able to put this behind us. So what you're asking us to do is, in effect, tell the judge that his refusal to grant summary judgment to you was inappropriate. That's right. Did you move for summary judgment? No. We moved to strike the complaint, and the standards, admittedly, are similar on the probability of success. I notice you're down to about three minutes and change. Did you want to keep somebody? I would like to reserve it. Thank you very much, Mr. Salvati. Thank you. Good morning. Good morning. May it please the Court, Scott Sims for the Respondent, Joseph Francis. I'll start, if Your Honors would like, with the jurisdiction question and then move on to the merits. I'll specifically start with the choice of law issue that was raised by you, Justice Hurwitz. I do think that there is no justice in the Ninth Circuit. I apologize. It's okay. I used to be Justice Hurwitz. But specifically, I do think that what you alluded to is accurate. There are two separate choice of law questions. Right. One is whether the SLAP law gets applied. The other one is whether Nevada's substantive law is applied to analyzing the merits of your claim. Yes, I agree with that proposition. I do think that the choice of law question as it relates to the privilege issue and the substantive law to apply to the claims illuminates in some fashion the choice of law issue as it relates to the SLAP statute. But I think that you have to apply two separate claims, or two separate analyses. So with respect to the choice of law question on the jurisdiction issue or the SLAP statute, I think you have to ask yourself, what does a SLAP statute do? A SLAP statute is a statute that basically is aimed at regulating speech. So then you have to ask, where did the speech occur? Well, is it aimed at regulating speech? That's the question I wanted to ask you. It seems to me that a reasonable argument can be made that California has said, we don't want our courts to be used to obstruct speech, to obstruct the exercise of First Amendment rights. And so we are going to regulate actions in our courts to make sure that they're not used for this improper purpose. And if that's the case, then wherever the underlying acts occurred, it's really, I would be inclined to think California law would apply to the SLAP statute because what California is basically saying is we don't want the judicial process to be used to obstruct speech wherever the speech might occur. What's your answer to that? I think here's the problem with that analysis. The problem with that is as you frame the issue, what the California courts then would have done is devised a purely procedural statute to allow lawsuits to be filtered out in an earlier stage in the proceeding. But we know that it's not purely procedural because of the cases that you alluded to earlier. It starts with Newsham and then moves on to metabolic research and then it moves on to MAKOF. By the way, I think all those cases are wrong, but we're stuck with them. And you have some agreement among your colleagues based upon the MAKOF decision, but for now, before this three-judge panel, that Newsham decision stands. So the analysis that you just set forward would assume that it was purely procedural. If it was purely procedural, California is entitled to do whatever they want. But it's not purely procedural. Why aren't we regulating the conduct of litigants and lawyers in California and saying you may want to bring these suits to obstruct the exercise of First Amendment rights around the country and other states may allow you to, but not here? Why? That seems to me the most reasonable reading of the statute. All that matters on this is whether it's appealable, right? That is correct. Yes. The only issue there on choice of law is whether or not it's ultimately appealable because there's a conflict between the Batsell case from this circuit holding that if it's California law, there's an immediate right of appeal, versus the metabolic research case that it's Nevada. I'd like to direct your attention to the merits, if I may. I understand their argument to basically be they met with the, that it's uncontroverted that they met with Zdrowski, told him truthfully everything, all the circumstances of this marker, filled out the form the way they were instructed to fill it out with the district attorney's office. They didn't conceal anything. They didn't make anything up. They told him the story. The district attorney told him what to do. And that that's uncontroverted. What's, therefore, they can't be, they can't be found to have been malicious in any way. I agree that that's their argument, so why don't I try to explain to you why I think it's wrong. Okay. First of all, is it, is any of the facts, are any of the facts contradicted there? Well, yes. A, I don't think there's any admissible evidence in the record that there wasn't any independent investigation because below Judge Fischer found, and was correct and had discretion, to disregard the declarations that were submitted because they were not properly attested to. But even if you consider the declarations which we submit she didn't do below, if you actually look at the declaration both from Ms. Conway, who's the employee from the WIN who submitted the bad marker complaint form, and you look at the declaration from the DA, it doesn't actually say that everything was told to them. It says that some stuff was told to them. Now, what, for example, doesn't it say? There's nothing in there, for example, about the issue that when the marker was actually given to my client that it's undisputed, and we've submitted documents to this effect, that there was sufficient evidence in his two bank accounts that the marker was drawn on to cover the marker. And that's also found in the Nevada court's opinion as it relates to the criminal case. And help me understand the elements of the crime in Nevada. I assume it's a terrible crime in Nevada not to pay a casino. But is the element of the crime that you took the marker without sufficient funds to repay or without intent to repay? Well, there were actually two crimes at issue that my client was charged with. The first was passing a bad check. The second was theft. Now, both of those crimes have an element of intent. Okay? So it's undisputed that at the time the marker was submitted, that there was enough money in the account. Yeah, but again, that's my question. The fact that I can promise to pay you some money and have enough to pay you, but I might have the intent not to pay you. Why is the fact that he had sufficient money in his accounts enough to establish that this prosecution or create a fact question about whether this prosecution was malicious? Well, Your Honor, if you actually look at the theft count, what's different about the theft count than the passing of a bad check count is that the theft count actually looks at you have to have an intent at the time that there was not enough money to cover it. So if you look at the Nevada court's opinion, what the Nevada court said was two things. First, they said as it respects both crimes, if you look at intent, that the government, the DA, needed to rely on a presumption in Nevada that if a mark is submitted or a check is submitted of the normal course and there's not enough money, that then you can presume intent. But there was a problem on the theft charge. The problem on the theft charge was you actually have to look at the time that you signed the marker was there enough money. And you're saying that they concealed from the district attorney. I want to make sure I'm clear about this because I'm going to ask them about it. Your contention is they concealed from the district attorney that the marker could have been paid when it was given, if not through Wells Fargo Bank, through the other bank. Yes. And if you look at the bad marker form, which is a complaint form, which is in the record, they only list one of the two bank accounts. They don't list the second bank account, and it's undisputed that there was enough money in that bank account at the time. So to be fair to say that all the other facts are basically uncontradicted, that this is your smoking gun? I do think that what I'm talking about is dispositive. I don't think that all the other facts are uncontradicted. If you actually look at the declarations themselves, for example, on the normal course of business issue, it's actually not explained. It's at best vague. Well, it may be vague, but it's not contradicted. I mean, do you have any other contradiction, anything else you can point to? No, Your Honor. The only evidence in the record there is there is testimony from a vice president of the casino of what the normal course of business is. But I can't tell you everything that was said between the district attorney and the casino, because I haven't been able to do any discovery, of course, to date. But it's one way to analogize it, I think, is if you look at least under California laws, I think about it here, and you look at the advice of counsel defense in a malicious prosecution case. Well, 16 months is an enormous amount of time in this kind of a dealing. Obviously, there was a lot of communication going on that we don't know about. You're saying you haven't been able to discover it, or is that just something that's absent from the record right now? Well, I'm saying, A, that I haven't been able to discover it because discovery was not allowed here at this point in time. Actually, if you look at when the case was filed, when they finally responded, there was some stipulations, extension of time for them to respond. The district court asked my predecessor counsel for some additional subject matter jurisdiction information. Can I return to Judge Silverman's question? Because this is interesting to me, and I want to make sure I understand it correctly. Your position is that under Nevada law, neither of these criminal charges would have been possible if the fact were established that your client had sufficient money in his bank accounts at the time that he took the marker to pay off the marker. Is that your position? The theft charge would not have been possible. How about the bad check charge? The bad check charge could have been possible, but then you have the issue that you needed the presumption of intent. Because there was enough money in the account, so they're sort of interrelated. Because there was enough money in the account, the DA still could have won on the passing the bad check charge if he could rely on the presumption of intent under Nevada law. But to get to the presumption of intent under Nevada law, then what you need to do is you need to show that the marker was submitted in the normal course. And the marker wasn't submitted in the normal course, and the reason we know that is if you look at the bad mark complaint form, it says the normal course was 30 days, but it took 16 months. And if you also look at the testimony we submitted from the vice president of the casino, which was taken in connection with another action, but it was submitted here, it was sworn testimony, he also says the normal course is 30 days. And would you assume that for a moment, that we think that Judge Fisher should have considered the unattested declarations of the two folks? Does that make any difference? No, I don't think it does, Your Honor. And the reason why is if you actually look at the declarations, they don't actually say that all the information was supplied. Now, do I know everything that happened? I wasn't in those rooms. I can't tell you everything that was in those conversations. But the defendant had a burden to come forward with evidence that everything was displayed. And that's why I'm asking this particular question. Is there any evidence submitted in the record, whether or not you think the judge should have considered it or not, that the DA was told that at the time the markers were taken out, there were sufficient funds to cover them? There's no evidence in the record that the DA was told that there were sufficient funds in the accounts at the time. So whether or not we can – At the time the marker was given to my client, the lingo can get a little confusing between when the marker was issued and when it was presented to the bank itself. And I think it was the defendants needed to come forward with information to that effect. To allude earlier to what I was saying about the advice of counsel defense, at least under California law that I'm familiar with and occurred to me as we are discussing this here, is the defendant, in order to assert an advice of counsel defense, the client in a malicious prosecution case has to actually come forward and show that the client told the lawyer all relevant and material facts in order to rely on the advice of counsel defense. Because if you didn't tell your lawyer everything, then you can't basically blame it on your lawyer. I think it's the same situation here. They needed to come forward with evidence to establish that they told the DA all material information. And that's the only way that they can even try to rely on what I'll call the independent investigation defense, which, for the record, I'm not willing to concede even applies under Nevada law. They've certainly cited some cases under California law to the effect that there's some sort of an independent investigation. Can I ask you to return to a topic that you haven't touched on yet? It's in your briefs. If we were to apply California's substantive law here, your claim would fail because of, I think, because of the absolute privilege that California gives to police reports. I'm trying to figure out what to do with the recent Lefevre case. What do you think it holds? It seems to me on its face, and let me tell you what I think it holds, but I'm having trouble understanding it. It says, yeah, we do have this absolute privilege in California, and that applies every place except in SLAP suits. Is that what you think it says? I think that what the Lefevre case holds is that when you look at the first prong of the two-pronged SLAP analysis, the first prong is that you have to show that there was protected activity under 425.16 of the Code of Civil Procedure in California, and that if you submit a false police report, that is not protected activity. Let me tell you why I'm having trouble understanding that, because if that were so, then there would never be a privilege because there's only a suit when one submits a false report. Certainly, there's no cause of action for submitting true reports. So I'm trying to figure out what this case is. I know it's a court of appeals case, and it's not necessarily binding on us, but I'm just trying to figure out what it holds. Well, Your Honor, I think that its holding is quite limited. And its holding is it's not that there's not a privilege once you get to the merits at summary judgment or at trial, that you could still raise the absolute privilege later on, but you can't raise the absolute privilege in an anti-SLAP. And that's the way I read it. So maybe you end up at the same place at the end of the day. Of course, there's the fee issue, so it's not exactly the same. Because if you won on a SLAP motion as a defendant, you're going to be entitled to a penalty. I guess my question is, does it matter which State's law we apply to the substantive claim? If Lefevre holds as you suggest it does? If Lefevre holds as I suggest it does, then they lose on the first prong, and I think that's the end of the analysis. So whether California law applies or Nevada law applies, the result would be the same. Yes, I agree. They lose on the first prong no matter what because as it relates to, I'll call it the standard for lack of a better word, the first prong. Now, that's a separate issue from whether or not you've met the summary judgment standard. I'm just talking about the privilege issue. But, yes, I agree that if Lefevre applies as I submit that it does, they lose on the first prong regardless of whether it's Nevada or California. Okay. Thank you very much. Thank you very much. Mr. Salvati, you get the last word here. Thank you. Let me just quickly address a few issues. First, the declarations, we believe, were properly authenticated. Judge Fisher referenced that at the hearing, that she thought they were not. But if you look at 28 U.S.C. 1746, and we found a case, Kirsting v. U.S., if a declaration says it's under penalty of perjury and says it's true and correct, then it's admissible. Two, there's a lot of discussion there by my opponent about the specific charges that were brought. That has nothing to do with my clients. My clients didn't tell the DA what charges to present to the grand jury. They simply made a referral to the DA based on the facts that they knew. And the referral was that they put the marker through to Wells Fargo Bank and it came back account closed? All of the information, yes. Okay. What about the Bank One account? Did they tell him that he also said he had a Bank One account, that you could have put it through to Bank One? The evidence in the records suggests, both from Deputy Zdrowski and from Barbara Conway, is that all of the evidence was presented. We don't specifically say in here that in the declarations that the Bank One account. But all the documentation was presented to the deputy DA. And he says in his declaration that he learned all the facts regarding Winn's unsuccessful attempts to collect the debt after Mr. Francis was released. Well, I don't know what he doesn't know. I mean, how do we know that your people told him there was also a second account at Bank One that had plenty of money in it at the time the marker was given? We know it just from looking at both declarations. Well, it doesn't specifically say that, Your Honor. It does not. I mean, isn't that a big problem? Well, I would submit, Your Honor, that the burden is on the other side to show that something wasn't presented to them. We presented evidence that everything was presented to the DA. He says I got all the facts. But A, B, C, and D, we're supposed to assume that you also did E. You're the declarant. Well, that's fair, Your Honor. But the deputy DA decided to proceed with the claim or to present it to the grand jury based on the presumption of intent. So he didn't look for evidence of what the intent was at the time the marker was submitted. Instead, he relied on his presumption, which the Nevada court later held did not apply. But you were – at least with respect to the facts regarding the Bank One account, as I understand it, there's no declaration from anybody on your side of the case that says we told the DA there was sufficient money in the Bank One account at the time or there was a Bank One account. All you're relying on is the DA's declaration that they told me I knew all the facts. Both the declaration of Ms. Conway and the deputy DA said I presented all the facts. Right. Ms. Conway, who's one of your employees, could have surely said in her declaration, and those facts included that there was a Bank One account. Whether or not she should have said it, she didn't say that, right? That's correct. Your time is running out, and I'm interested in your analysis of the fever case. Thank you. As I read it, it seems to say for slap purposes, this privilege doesn't apply. Your Honor, we actually believe the Lefebvre case is very limited. It flows from a case called Flatley, which is a California case which says that there's this exception and the first prong is not satisfied only when the actions alleged are illegal as a matter of law. So it only applies when the record, and this is the language from Flatley and Lefebvre cites Flatley, which is the record conclusively establishes that the statements to the police are illegal activity. And the facts of both of those cases are extremely unusual. Otherwise, as Your Honor pointed out, this exception would swallow the rule. And so it's a very narrow exception that does not apply here, because we've certainly made a prima facie showing that this is First Amendment protected activity. Thank you, Mr. Salvati. Mr. Sims, thank you, too. The case just argued is submitted. Thank you very much. Gentlemen.
judges: Vinson, Silverman, Hurwitz